UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE
PETITION OF SETTOON TOWING
LLC

CIVIL ACTION

NO: 07-1263

SECTION: "S" (4)

## ORDER AND REASONS

The Motion for Partial Summary Judgment by Settoon Towing, LLC (Doc. #160) is **DENIED.** The Motion to Review Magistrate Judge's Ruling Filed August 7, 2009 (Doc. #257), is **DENIED**, and the decision of the magistrate judge is **AFFIRMED.**

## BACKGROUND

On January 20, 2007, the M/V CATHY M. SETTOON, while pushing a barge, struck a well owned and operated by ExPert Oil & Gas, LLC ("ExPert"), in Bayou Perot in Jefferson Parish, Louisiana. The allision caused extensive damage to the wellhead and resulted in an uncontrolled spray of crude oil into the bayou. On February 23, 2007, Settoon Towing LLC ("Settoon"), the vessel owner, gave the first official notice of the incident, when the United States Coast Guard interviewed the captain of the vessel. On March 12, 2007, Settoon filed a Complaint for Exoneration from or Limitation of Liability, pursuant to the Limitation of Liability Act, 46 U.S.C.

§181, *et seq.* ExPert, St. Paul Surplus Lines Insurance Company and the United States of America filed claims. ExPert is seeking to recover, among other things, its cleanup costs, loss of revenue and property damage, as well as indemnification from Settoon for all damages arising from the allision and all other claims by any other parties.[1]

Settoon moves to dismiss ExPert's deferred production and reservoir damage claims[2] because ExPert had no proprietary interest at the time of the allision, and thus no standing to assert these two claims. The basis of Settoon's argument is that the assignment of the lease to ExPert, which occurred on September 7, 2007, eight months after the allision, was not effective on the date of the allision. ExPert argues that it and its joint venturers had an ownership interest and the right to produce minerals from the under state lease on the date of the allision by virtue of an assignment signed after the allision, but made retroactive to August 1, 2006.

---

[1]The government is seeking cleanup costs of $10,025,139.84, and asserts that its claim is not subject to the Limitation of Liability Act. St. Paul, which issued to ExPert a "Control of Well" policy, asserted its claim for damages pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, averring that the damages were caused solely by the negligence of Settoon and the unseaworthiness of the vessel.

[2]ExPert alleges that the allision caused it an economic loss because it caused a delay in selling the production from the reservoir, and that the reservoir itself sustained physical damage due to water intrusion into the mineral formation of the reservoir.

Settoon also appeals the magistrate judge's ruling, granting ExPert's motion for leave to amend to add 30 claimants and the government's motion for leave to amend to add Alpine as a co-defendant.

The following time line is germane to this motion:

| Date | Event |
|---|---|
| September 14, 2005: | State granted State Lease No. 18748 to Alpine as sole mineral lessee. |
| August 1, 2006: | ExPert entered into Operating Agreement with lessee Alpine Exploration Companies, designating ExPert as Operator for the drilling for State Lease 18748 (Doc. #160, Ex. 6and7). |
| August 14, 2006: | ExPert signed Participation Agreement with Alpine, conveying subject leases to ExPert and its joint venturers (Doc. #177, Ex. 2). |
| November 8, 2006: | Unit Plat for initial well was filed in public records. |
| November, 2006: | Well was perforated and completed. |
| January 20, 2007: | Date of allision. |
| February 23, 2007: | Settoon gave first official notice of incident to USCG. |
| March 12, 2007: | Settoon filed Limitation Complaint. |
| May 14, 2007: | ExPert filed its claim, asserting tort damages relating to State Lease No. 18748, including |

|                     |                                                                                                                                                                                                                                                      |
|---------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                     | deferred production and reservoir damage claims.                                                                                                                                                                                                     |
| June 2007:          | Assignment of State Lease 18748 signed by parties (ExPert argues effective date is retroactive to August 1, 2006).                                                                                                                                   |
| September 5, 2007:  | Alpine acknowledged to Louisiana Mineral Board that it was lessee of State Lease No. 18748, and executed Unitization Agreement whereby it agreed to create voluntary unit with two other adjoining mineral leases held by Alpine (ExPert is not party to Alpine Unit Agreement). |
| September 9, 2007:  | Alpine executed assignment of State Lease No. 18748, to ExPert of Alpine's undivided working interests and net revenue interests in well.                                                                                                            |
| December 12, 2007:  | Louisiana State Mineral Board approved Lease assignment under La. Rev. 30: 128.                                                                                                                                                                      |
| January 30, 2008:   | Louisiana Mineral Board's resolution of approval is attached to Alpine assignment and recorded in Jefferson Parish where property is located.                                                                                                        |

## ANALYSIS

**1. Motion for Partial Summary Judgment**

A. Legal Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

B. ExPert's Standing

Settoon moves to dismiss the deferred production and reservoir damage claims by ExPert Oil & Gas, LLC and argues that ExPert lacks standing to assert a claim for deferred production or reservoir damages for losses arising from a lease to which it was not a party on the date of the incident. Settoon points out that the assignment states that the change of ownership "shall not be effective unless and until a reassignment instrument is submitted to the Louisiana State Mineral Board for approval." Settoon argues that the assignment was not effective as to Settoon until January 30, 2008, when the assignment was recorded. Settoon argues that on the date of the allision ExPert had no legal title or proprietary interest in the mineral lease and reservoir; that Alpine was

5

the sole mineral lessee; and, that the State of Louisiana, not ExPert, is the owner of the reservoir upon which the well was drilled. Settoon states that ExPert's only connection to the property was that it acted as the operator in the drilling of the well on Alpine's mineral lease.

ExPert argues that it has the legal right to pursue the claim on behalf of itself and the other members of the groups because the Operating Agreement signed on August 1, 2006, recognized the ownership interest of the participants in the state lease, and designated ExPert to control and handle all matters for the participants involved in the drilling and operating of the well.

Settoon's argument that because the state lease was not recorded before the allision, ExPert incurred no damages, is not persuasive. Before 1995, La. Rev. Stat. §9:2721A defined third persons' entitlement to be protected by the registry laws, and case law construing it held that the public records doctrine was inapplicable to tort victims. See Gullatt v. Newell Industries, Inc., 688 So.2d 1191, 1196 (La. App. 2nd Cir.1996), *writ denied*, 689 So.2d 1377 (1997)("The public records doctrine and the requirement of registry under Art. 491 ... have nothing to do with persons who sustain damages from a defective immovable since they are not acquiring ownership rights affecting such immovable in reliance upon the public records."). See also Myers v. Burger King Corp., 638 So. 2d 369, 374-75 (4th Cir. 1994)(public records doctrine had no bearing on who the building owner was for purposes of tort article 2322); Pellegrin v. Ditto, 625 So.2d 1356, 1362 (1st Cir. 1993)("...

petitioners, who are alleged tort victims, are not third parties entitled to rely on the public records, and they are not prejudiced by the reformation of the act of cash sale because of error."). In Dupre v. ABC Ins. Co., 776 So. 2d 25 (La. App. 4th Cir. 2000), the state appellate court stated that article 491 was enacted to protect persons acquiring rights in immovable property and that personal injury victims were not among those within the definition of parties protected by and entitled to rely upon the public registry laws of Louisiana.

Settoon argues further that the operating agreement, which was signed before the allision, recognizes the ownership interest of the participants, including ExPert; and designates ExPert as the operator for the drilling for State Lease 18748 (Doc. #160, Ex. 6and7).

Article III.D of the Operating Agreement (Doc. #160, Ex. 6and7) states:

> All equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A." In the same manner, the parties shall also own all production of oil and gas in the Contract Area subject to the payment of royalties, the extent of which shall be borne as hereinafter set forth.

Exhibit "A" of the Operating Agreement lists by name the ownership of the well.

Article VI.C of the Operating Agreement (Doc. #160, Ex. 6and7) states:

> Subject to the Gas Balancing Agreement attached hereto ... each party shall have the right, but not the obligation to take in kind or separately dispose of its proportionate share of oil and gas produced from the Contract Area.

Exhibit E to the Operating Agreement (Doc. #160, Ex. 6and7) states:

> The parties hereto own and are entitled to share in the oil and gas production from the Lease in accordance with their respective interests as set forth in said Operating Agreement.

On August 14, 2006, ExPert signed Participation Agreement with Alpine, conveying subject leases to ExPert and its joint venturers (Doc. #177, Ex. 2). The Participation Agreement states:

> Immediately upon filing of a Unit Plat for the Initial Well, Alpine shall immediately assign to Participant, a 4.375% interest in the subject leases, insofar as such leases cover the land inside of the geographic boundaries of the Louisiana Conservation Unit or Units Adopted or applicable to such Initial Well (The "Initial Unit"). Alpine shall deliver an assignment or assignments of those interests to Participant, using the form attached hereto and made a part hereof as Exhibit "4."

The assignment of the State Lease 18748 was signed by the parties on June 2007.

The burden of establishing the elements of standing is on the party seeking jurisdiction in the federal courts. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Further, that party must establish the elements of standing for each claim that a party seeks to press. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 126 S.Ct. 1854, 1867 (2006). There are constitutional and prudential

requirements. Standing, at its "irreducible constitutional minimum," requires plaintiffs to demonstrate 1) that they have suffered an "injury-in-fact"; 2) that the injury is fairly traceable to the defendant's actions; and 3) that the injury will likely be redressed by a favorable decision. Lujan, 504 U.S. at 560. An "injury-in-fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Webb v. City of Dallas, 314 F.3d 787, 791 (5th Cir. 2002). Courts have also required that a litigant generally asserts his or her own interests; that the federal court does not adjudicate mere generalized grievances that are more appropriately addressed by the representative branches of government; and that the plaintiff's alleged injury arguably falls within the "zone of interests" protected by the law invoked. Allen v. Wright, 468 U.S. 737, 751 (1984).

Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed. U.S. Constitution Art. 3, §2, cl. 1.

The operating agreement and the participation agreement establish that ExPert has standing in that at an irreducible constitutional minimum, ExPert has demonstrated that it has suffered an "injury-in-fact"; 2) that the injury is fairly traceable to Settoon's actions; and 3) that the injury will likely be redressed by a favorable decision. Lujan, 504 U.S. at 560. Article III.D of the Operating Agreement which ExPert signed states that "all equipment and materials acquired in operations on

the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit 'A.'" Exhibit E to the Operating Agreement states that the parties to the agreement "are entitled to share in the oil and gas production from the Lease in accordance with their respective interests as set forth in said Operating Agreement." Further, in June 2007, Alpine assigned the lease to ExPert. These agreements establish ExPert's interest in the well and standing to assert its interest in this matter. The fact that the lease was not filed until after the allision does not disturb ExPert's interest in the well.

The motion for partial summary judgment is **DENIED.**

**2. Motion to Review Magistrate Judge's Order**

Settoon appeals the magistrate judge's ruling, granting ExPert leave to amend and to add thirty claimants. Settoon argues that the ruling is incorrect because the added parties were never properly named in the limitation proceeding or as parties in any other pleading and as a result are barred by the Order of Default by this court and Fed. R. Civ. P. 60 and because the claims are barred by prescription and laches. Settoon contends that the government's motion for leave should have been denied because the government's lack of due diligence fails to qualify as good cause under Fed. R. Civ. P. Rule 16.

ExPert argues that it met with the non-operating owners who specifically authorized ExPert to act on behalf of all of the non-operating owners and that prior to its motion for leave, it filed pleadings as "ExPert Oil & Gas, LLC, on its own behalf and as an undivided interest owner and as operator on behalf of all those with an interest in the SL 18748 #1 Well located in Bayou Perot, in Jefferson and/or LaFourche Parish, Louisiana." ExPert explains that it sought leave to amend its answer to list each of the owners individually in lieu of the broader language that it used in its earlier answer.

The parties individually listed by ExPert were previously identified in ExPert's initial disclosures, answers to interrogatories, witness lists, ExPert's corporate deposition and in the pre-trial order which identified ExPert as representing these owners. Further, ExPert has apparent authority to act on the non-operating owners' behalf as Article X of the operating agreement states:

> Operator may settle any single uninsured third party damage claim or suit arising from operations hereunder if the expenditure does not exceed Fifteen Thousand Dollars and if the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above amount, the parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to the operator.

The magistrate judge did not err when she granted ExPert leave to specify the names of the non-operating owners in its answer when those names had been known to Settoon.

11

As to the United States' motion for leave to add Alpine, the United States asserts that it moved to add Alpine as soon as it discovered that the State of Louisiana had granted Alpine the right to explore for minerals. Although on July 1, 2008, the government served ExPert with an interrogatory which was directed to the issue, ExPert's response did not reveal Alpine's interest. The magistrate judge granting of leave to the government to add Alpine was not in error.

The Motion to Review Magistrate Judge's Ruling Filed August 7, 2009, is denied, and the decision of the magistrate judge is affirmed.

New Orleans, Louisiana, this  4th  day of December, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**