UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE
PETITION OF SETTOON TOWING
LLC

CIVIL ACTION

NO: 07-1263

SECTION: "S" (4)

## ORDER AND REASONS

The United States of America's Motion for Partial Summary Judgment to Recover its Removal Costs (Doc. #204) is **GRANTED.**

## I. BACKGROUND

On January 20, 2007, the M/V CATHY M. SETTOON, while pushing a barge, struck a well owned and operated by ExPert Oil & Gas, LLC ("ExPert"), in Bayou Perot in Jefferson Parish, Louisiana. The allision caused extensive damage to the wellhead and resulted in an uncontrolled spray of crude oil into the bayou. On February 23, 2007, Settoon Towing LLC ("Settoon"), the vessel owner, gave the first official notice of the incident, when the United States Coast Guard interviewed the captain of the vessel. On March 12, 2007, Settoon filed a Complaint for Exoneration from or Limitation of Liability, pursuant to the Limitation of Liability Act, 46 U.S.C. §181, *et seq.* ExPert, St. Paul Surplus Lines Insurance Company and the United States of America (the "United States") filed claims. The United States filed claims pursuant to the general maritime law, the Rivers & Harbors Act, 33 U.S.C. §§ 401 *est seq.*, the Oil Pollution Act of 1990, 33 U.S.C.

§§ 2701 *et seq.* ("OPA 90"), and other federal law. (Doc. #6). In pertinent part, the United States asserts a claim on behalf of the Oil Spill Liability Trust Fund (the "Fund") for the costs that it incurred in connection with the removal, cleanup and other response efforts related to the aforementioned oil spill.

The Untied States, on behalf of the United States Coast Guard's National Pollution Funds Center, which administers the Fund, filed a motion for summary judgment seeking to establish its entitlement to recover said costs related to the cleanup of the oil spill. (Doc. #204). Specifically, the United States claims that it is entitled to recover $11,650,264.87 in removal costs. Id. The United States argues that OPA 90 permits it to recover from the responsible parties the costs incurred to cleanup and monitor the oil spill. Id.

Settoon opposes the United States' motion, arguing that the United States does not have a viable claim against Settoon as a matter of law. (Doc. #224). Settoon also argues that the United States failed to establish its burden of proof that the cleanup expenditures were reasonable and necessary. Id.

## II. ANALYSIS

**1.    Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c). If the moving party meets the initial burden of establishing that

there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**2.     The Oil Pollution Act of 1990**

The United States argues that OPA 90 permits it to recover from the responsible parties the $11,650,264.87 in costs incurred to cleanup and monitor the oil spill. The United States claims that it produced the documents supporting those costs to the other parties and that four witnesses, subject to cross-examination, testified to the authenticity and accuracy of those documents.

Congress enacted OPA 90 in response to the Exxon Valdez oil spill in Prince William Sound, Alaska. Rice v. Harken Exploration Co., 250 F.3d 264, 266 (5thCir. 2001) (citing Senate Report No. 101-94, *reprinted in* 1990 U.S.C.C.A.N. 772, 723). The law was intended to streamline federal law and "provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills with the petroleum industry." Id. Pursuant to OPA 90 responsible parties are strictly liable for the discharge of oil. Id. OPA 90 provides in pertinent part that:

> [E]ach responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result form such incident.

33 U.S.C.A. § 2702(a) (West 2009). OPA 90 defines removal costs as costs incurred after a discharge of oil has occurred to contain and remove oil from the water and shoreline or other actions necessary to mitigate damage to the public health or welfare. Id. at §§ 2701(30)-(31). The removal costs for which responsible parties are liable include "all removal costs incurred by the United

3

States." Id. at § 2702(b)(1)(A). Further, OPA provides that responsible parties are liable for all costs incurred by the Fund to pursue recovery of removal costs, including interest, administrative and adjudicative costs, and attorney's fees. Id. at § 2715(c).

In support of its motion for summary judgment, the United States filed the Declaration of Capt. Terry Gilbreath, USCG (Ret.). At the time of the oil spill, Captain Gilbreath was the Captain of the Port, and Commanding Officer of the Marine Safety Unit, in Morgan City, Louisiana, and as such, was responsible for oil spill response. (Doc. #204-3 at ¶ 2). Captain Gilbreath was appointed as the Federal On-Scene Coordinator (the "FOSC") during the second week of the oil spill response. Id. at ¶ 10. When the United Stated assumed control of, and responsibility for, the oil spill cleanup, Captain Gilbreath oversaw the oil spill response efforts, which included planning an appropriate response with the aid of a Scientific Support coordinator from the national Oceanic and Atmospheric Administration. Id. at ¶¶ 10, 13, & 14. Further, Captain Gilbreath visited the oil spill site and reviewed the documents related to the response costs. Id. at ¶ 18. As a retired Commissioned Officer in the United States Coast Guard, with 25 years of experience, and the FOSC for the oil spill in question, Captain Gilbreath declared that, to the best of his knowledge, the measures taken to cleanup the oil spill were prudent, necessary and reasonable, and that no charges appeared to be arbitrary or capricious. Id.

In U.S. v. Hundai Merchant Marine Co., Ltd., 172 F.3d 1187, 1191 (9th Cir. 1999), the Ninth Circuit Court of Appeals found that the Administrative Procedure Act applies government actions to prevent or contain oil spill disasters. As such, the Court held that the United States may recover

its OPA 90 removal costs, unless its actions were arbitrary or capricious. Id. (citing 5 U.S.C. § 706(2)(A)). Further, the Fifth Circuit Court of Appeals has held that when agency decision are challenged under the "arbitrary and capricious" standard, the challenging party bears the burden of proof to show that the agency's decision was "either not 'based on a consideration of the relevant factors' or amounted to a 'clear error of judgment.'" Ward v. Campbell, 610 F.2d 231, 235 (5th Cir. 1980) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 126 (1971)).

Settoon's reliance on 33 C.F.R. Part 136 to attempt to shift the burden of proof to the United States is misplaced. Title 33, Part 136 of the Code of Federal Regulations prescribes regulations for the presentation, filing, processing, settlement, and adjudication of claims authorized to be presented to the Fund under 33 U.S.C. § 2713. 33 C.F.R. § 136.1. These regulations do not affect the burden of proof in an action brought on behalf of the Fund to recover removal costs from the responsible parties.

Settoon has failed to carry its burden of proving that the United States' removal costs related to the oil spill were arbitrary or capricious. Settoon does not dispute the accuracy of the amount of the United States' removal costs, $11,650,264.87, but in response to the United States' Statement of Uncontested Facts, Settoon admits the United States' witnesses' testimony as to the amount of the removal costs, but denies that the costs were necessary or reasonable. Such denial, without supporting evidence, is insufficient to carry Settoon's burden of showing that the United States' removal costs were arbitrary or capricious.

Moreover, the case relied upon by Settoon as authority for United States' alleged failure to comply with Rule 56(e)(1) U.S. v. Viking Res., Inc., 607 F. Supp. 2d 808 (S.D. Tex. 2009) is distinguishable. Here, Captain Gilbreath's declaration did not include a statement as to the amount of costs. Rather, as the FOSC, he attested that the costs were reasonable and necessary, and that he did not see any arbitrary and capricious charges. Settoon does not dispute that Captain Gilbreath has first hand knowledge of the United States' actions in cleaning up the oil spill or that he is qualified to testify as to the reasonableness of those actions.

Further, it is immaterial for the purposes of this motion whether the United States has a claim against Settoon. In filing this motion, the United States seeks only a declaration that it is entitled to recover its removal costs from the responsible parties. The motion does not request a designation of the party or parties against whom recovery may be made. OPA 90 provides that "[s]uch an action may be commenced against any responsible party . . . ,or against any other person who is liable, pursuant to any law, to the compensated claimant or to the Fund, for the cost or damages for which the compensation was paid." 33 U.S.C. § 2715(c). Thus, at trial it will be determined how ExPert, as a responsible party, and Settoon, as a potential non-sole-fault third-party, share the allocation of the costs incurred.[1] Further, ExPert has not opposed the United States' motion for partial summary judgment.

---

[1] The Court previously held that ExPert is a responsible party. (Doc. #124).

## III. CONCLUSION

For the reasons stated above, the United States' Motion for Partial Summary Judgment to Recover its Removal Costs is **GRANTED**. The United States is entitled to recover $11,650,264.87, exclusive of prejudgment interest and other costs, incurred in removing oil from the water and shoreline and taking actions to minimize or mitigate damage to the public health and welfare, as a result of the oil spill of January 20, 2007, involved in this action.

New Orleans, Louisiana, this __4th__ day of December, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**