UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE
PETITION OF SETTOON TOWING
LLC

CIVIL ACTION

NO: 07-1263

SECTION: "S" (1)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Settoon Towing LLC's Motion for Partial Summary Judgment on ExPert's Damages (Doc. #209) is **GRANTED** as it relates to ExPert's claims for individual damages and **DENIED** as it relates to ExPert's claims for Barataria Production Services, Gulf Intracoastal Waterway shutdown suits, Natural Resources Damage Assessment claims, overhead increases, lost business opportunities, increased control of well rates, loss of business reputation, potential cleanup costs if Well #1 fails, and increased insurance costs.

## BACKGROUND

On January 20, 2007, the M/V CATHY M. SETTOON, while pushing a barge, struck a well owned and operated by ExPert Oil & Gas, LLC ("ExPert"), in Bayou Perot in Jefferson Parish, Louisiana. The allision caused extensive damage to the wellhead and resulted in an uncontrolled spray of crude oil into the bayou. On February 23, 2007, Settoon Towing LLC ("Settoon"), the vessel owner, gave the first official notice of the incident, when the United States Coast Guard interviewed the captain of the vessel. On March 12, 2007, Settoon filed a Complaint for

Exoneration from or Limitation of Liability, pursuant to the Limitation of Liability Act, 46 U.S.C. §181, *et seq.* ExPert, St. Paul Surplus Lines Insurance Company and the United States of America (the "United States") filed claims.

Trial was originally set for May 19, 2008 (Doc. #10). Motions to continue the trial were granted and the trial was reset for January 26, 2009. (Docs. #58, #62). The court held a pretrial conference on January 8, 2009 and a pretrial order was filed into the record (Docs. #126, #127). The pretrial order included an estimate of ExPert's damages which totaled $64,000,000. A new scheduling order was issued, which included various deadlines for the completion of discovery, and the trial date was reset for September 1, 2009. (Doc. #125).

On February 17, 2009, Settoon filed a motion to compel ExPert to respond to outstanding discovery requests, produce all documentation supporting its claims for damages, and sought an order precluding ExPert from using any information that was not produced. (Doc. #131). As a result, the magistrate judge ordered ExPert to produce all information supporting its claim for damages by April 13, 2009. (Doc. #137). ExPert did not produce all of the information and did not seek an extension of the April 13, 2009 deadline. (Doc. #158).

The parties conferred on May 1 and 5, 2009 and it was determined that some documents Settoon sought did not exist. Id. ExPert asked that it be allowed an extension to May 27, 2009 to produce the documents. Id. In the meantime, Settoon filed a motion to enforce the magistrate judge's Order. (Doc. #149).

The magistrate judge issued a Report and Recommendation regarding Settoon's motion to enforce. (Doc. #158). The magistrate judge recommended that ExPert be barred from using any documents in support of its claims produced after May 27, 2009. Id. Further, the magistrate judge recommended that ExPert's claims for potential Gulf Intracoastal Waterway ("ICW") shutdown suits, potential Natural Resources Damage Assessment ("NRDA") regulations assessments and/or fines, potential cleanup costs if Well #1 fails, increased insurance costs, lost business opportunities, estimated individual damages, damages to ExPert's reputation, and Barataria Production Services facility fee increases, be dismissed for failure to present any supporting documentation. Id. In ruling on ExPert's objections to the magistrate judge's Report and Recommendation, the court held that ExPert could produce other responsive documents which were not in its possession and/or control on May 27, 2009 and that, in the absence of documents to support its allegations, ExPert would be allowed to present witness testimony to support its claims. (Doc. #265). At the request of ExPert, the trial was again continued and is now tentatively scheduled to commence on May 10, 2010. (Docs. #221, #264).

Settoon filed this motion for partial summary judgment seeking the dismissal of ExPert's damages claims, which the magistrate judge recommended for dismissal. ExPert opposes Settoon's motion.

**ANALYSIS**

1.  **Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

2.  **ExPert's Damage Claims**

    a.  **Barataria Production Services**

On June 27, 2007, Barataria Production Services ("BPS") made a written demand on ExPert for damages that it allegedly suffered as a result of the allision and oil spill at issue. (Doc. #209-3). Specifically, BPS seeks to recover damages it allegedly suffered as a result of its alleged inability to access its production platform while the oil spill cleanup was in progress. Id. Settoon argues that ExPert cannot assert a damage claim against it for BPS's alleged economic loss. Settoon contends that the Rule of Robins Dry Dock precludes BPS from recovering for its economic losses without the prerequisite physical injury to a propriety interest. See Robins Dry Dock & Repair Co. v. Flint, 48 S.Ct. 134 (1927). ExPert argues that BPS made its claim under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.*, ("OPA"), not the general maritime law, and thus the Rule of Robins Dry Dock is inapplicable.

4

Pursuant to Robins Dry Dock and its progeny, in a maritime negligence suit, there can be no recovery for purely economic claims absent physical injury to a proprietary interest. See Robins Dry Dock, 48 S.Ct. at 135; see also Louisiana ex. rel. Guste v. M/V TESTBANK, 752 F.2d 1019, 1023 (5th Cir. 1985) (en banc). In Robins Dry Dock, a vessel's time charter brought claims against the dry dock for negligence that delayed the charterer's use of the vessel and resulted in economic losses. Id. The Supreme Court held that the dry dock company did not know about the charter party and therefore could not be held liable for unintended injuries suffered by the charterer; and that only the vessel's owners, who had a contract with the dry dock, could maintain a cause of action. Id.

In M/V TESTBANK, the Fifth Circuit affirmed the Robins Dry Dock principle, explaining that the Robins Dry Dock decision was based upon "a pragmatic limitation imposed by the [Supreme] Court upon the tort doctrine of foreseeability." M/V TESTBANK, 752, F.2D at 1023. The Supreme Court opined that the time charter's claims for delay were too remote, not foreseeable, and that allowing such claims would invite other parties even more remote to the injury to file suit. See id. As a result, the Supreme Court severed the chain of liability at those parties who suffer physical injury to a proprietary interest, otherwise, each successive claimant would argue that the court should allow his or her claim, and server the chain of liability at the next plaintiff. Sekco Energy, Inc. v. M/V MARGARET CHOUEST, 820 F.Supp. 1008, 1011 (E.D.La. 1993). Further, in Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC, 251 F.3d 1069, 1071-72 (5th Cir. 2001), the Fifth Circuit affirmed M/V TESTBANK, in reversing the district court's ruling that M/V TESTBANK "is merely an application of the general requirement that damage be foreseeable to be

5

recoverable in tort," and restated that "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."

Further, the Fifth Circuit applied the above-stated rule in <u>In re: Taira Lynn Marine Ltd No. 5, LLC</u>, 444 F.3d 371, 378-79 (5th Cir. 2006), to disallow remote claims for economic loss that resulted from an allision. In that case, the M/V MR. BARRY allided with the Louisa Bridge in St. Mary Parish, Louisiana. <u>Id.</u> at 375. The barge was carrying cargo that consisted of a gaseous mixture of propylene/propane that was discharged into the air. <u>Id.</u> at 376. As a result, the Louisiana State Police ordered an evacuation of all businesses an residences within a certain radius of the allision. <u>Id.</u> The barge owner filed a complaint for exoneration from or limitation of liability, in which several hundred claims were filed. <u>Id.</u> Among the claims, were claims for economic losses sustained by businesses as a result of the evacuation. <u>Id.</u> at 377. For example, Cajun Wireline, Inc., a full service wireline provider, claimed that three of its boats could not perform their duties and Coastal Marine, Inc., a pile driving business, claimed that it could not perform its work. The Fifth Circuit, applying the Rule of <u>Robins Dry Dock</u>, as articulated in <u>M/V TESTBANK</u> and affirmed by <u>Reserve Mooring</u>, concluded that, because these and the other economic damage claimants did not suffer any physical damage to a proprietary interest, their claims were barred. <u>Id.</u> at 379.

In this case, BPS's has made a claim against ExPert for damages it allegedly suffered as a result of its alleged inability to access its production platform while the oil spill cleanup was in progress. BPS does not allege that it suffered physical injury to a proprietary interest, but rather economic damages that are remote to ExPert's property damage that was allegedly caused by

6

Settoon's negligence. Thus, pursuant to the Rule of Robins Dry Dock and its progeny, if BPS's claims against ExPert were made under the general maritime law, they would be precluded.

However, the OPA damages provision preempts the general maritime law. Gabarick v. Laurin Mar. (Am.) Inc., 623 F.Supp.2d 741, 746 (E.D.La. 2009)). Pursuant to the OPA, responsible parties are strictly liable for the discharge of oil:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result form such incident.

33 U.S.C.A. § 2702(a) (West 2009). Subsection (b)(2) of 33 U.S.C.A. § 2702 specifies the OPA covered damages, referred to in 33 U.S.C.A. § 2702(a), includes:

> (E) Profits and earning capacity
>
> Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

OPA's legislative history makes it clear that to recover damages under section 2702(b)(2)(E), "[t]he claimant need not be the owner of the damaged property or resources to recover for lost profits or income." In re: Taira Lynn Marine Ltd No. 5, LLC, 444 F.3d at 382 (citing quoting Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623, 631 (1st Cir. 1994) (internal citations omitted)). Instead, the claimant must show that the damage resulted from a discharge or threatened discharge

of oil into navigable waters or the adjacent shoreline. Id. at 383 (quoting Gatlin Oil Co. v. U.S., 169 F.3d 207, 212 (4th Cir. 1999)). Here, ExPert has raised an issue of fact as to whether BPS's economic losses are due to property damage resulting from the discharge of oil. Thus, ExPert can assert a claim against Settoon for BPS's alleged economic losses under OPA.

For the reasons stated above Settoon's motion is denied as to ExPert's claim for reimbursement for BPS's economic damages.

### b.     ICW Shutdown Suits

ExPert has also asserted a damage claim against Settoon for potential suits seeking economic damages for the shutdown of the Gulf Intracoastal Waterway ("ICW"). ExPert concedes that no such suits have yet been filed, but argues that it should be permitted to maintain its damage claim against Settoon until the statute of limitations on such potential claims has run. Settoon argues that the potential economic damage claims are prohibited by the Rule of Robins Dry Dock because only the State of Louisiana has a proprietary interest in the ICW. ExPert, on the other hand, contends that the Rule of Robins Dry Dock is inapplicable because such claims would be brought under OPA, not the general maritime law.

ExPert may be able to maintain a damages claim against Settoon for potential ICW shutdown suits. The potential suits described by ExPert are similar to the claim made against it by BPS, i.e. claims by other businesses who suffered economic losses because they could not conduct business due to the ICW shutdown. As stated above, such claims, where the damage resulted form the discharge or oil, are permitted by OPA. The court recognizes the speculative nature of allowing

8

ExPert to maintain a claim against Settoon for "potential" suits. However, dismissing such claims at this time could prejudice ExPert due to the nature of a limitation of liability proceeding.

OPA provides that claimants must pursue their claims against a responsible party within three years of the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care. 33 U.S.C.A. § 2717. The oil spill at issue occurred on January 20, 2007. It appears from the record that the cleanup of the spill continued through February 2007. (See Doc. #204). Due to the time frame of the oil spill clean-up, any potential claimant probably should have known by February 2007 that it suffered an economic loss due the shutdown of the IWC because of the oil spill. Thus, the potential claims will not likely prescribe until February 2010. ExPert may maintain its claims against Settoon for potential ICW suits until then. If no such suits or claims are made against ExPert by then, Settoon may move for summary judgment as to those claims at that time. As such, Settoon's motion is denied as to ExPert's claim for potential ICW suits.

    **c.**    **NRDA Claims**

ExPert asserts a damage claim against Settoon for potential fines and/or penalties which may be asserted against it by the United States Government under the Natural Resource Damage Assessment ("NRDA") regulations, 15 C.F.R. §990, *et seq.* The referenced regulations are promulgated by the National Oceanic and Atmospheric Administration under OPA. See U.S. v. M/V COSCO BUSAN, LR/IMO, 557 F.Supp.2d 1058, 1065, fn. 4. Pursuant to 33 U.S.C.A § 2706(c), the Federal Trustee must assess the natural resources damages that may result from an oil spill. The

above-referenced regulations outline the procedure for such assessment. The NRDA regulations provide for three phases of assessment and restoration: (1) the Pre-assessment Phase; (2) the Restoration Planning Phase, and (3) the Restoration Implementation Phase. See 15 C.F.R. §990, *et seq*. Each phase has its own procedural nuances and requirements that can cause the entire process to take quite some time. See id. Under 33 U.S.C.A. § 2717, an action for nature resource damages must be brought within three years of the date of completion of the natural resources damage assessment under 33 U.S.C.A. § 2706(c).

This court is not aware of an ongoing natural resources damage assessment. Due to the serious nature of potential natural resource damage and the lengthy process for assessing such damage, the court is concerned that dismissing ExPert's claims against Settoon for potential NRDA fines and/or penalties may unfairly prejudice ExPert. As a result, Settoon's motion is denied as to ExPert's claim for potential NRDA fines and/or penalties, pending a determination of any natural resource damage assessments that have been conducted and any claims made against ExPert for such damages.

### d. Individual Damages Suffered by ExPert Employees

ExPert has asserted a claim against Settoon for damages allegedly suffered by two of its employees. Specifically, ExPert alleges that the oil spill caused Pete Kelly to "suffer from insomnia, nausea, and other stress related illnesses" and that he "was unable to spend time with his family for an extended period of time due to the amount of time and energy that was expended responding to this incident." (Doc. #127). ExPert also claims that Bill Von Eberstein "suffered heart trouble and

developed cancer due to the stress involved in responding to this incident." Id. Settoon argues that these claims must be dismissed because ExPert, as a limited liability company, does not have the right to assert these claims on behalf of its members and employees. ExPert, on the other hand, contends that it can bring such suits because Kelly and Von Eberstein are owners of and have an interest in the oil well at issue. (Doc. #229).

ExPert is a limited liability company organized under the laws of Louisiana. Pursuant to Louisiana Revised Statute § 12:1301(10), a limited liability company is a separate legal entity distinct from its members. LA. REV. STAT. ANN. § 12:1301(10) (2009). Ordinarily, a member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company. Id. at § 12:1320(C). Similarly, a limited liability company, as a separate legal entity, should not be permitted to bring an action for personal injuries on behalf of its members. Thus, Settoon's motion is granted as to ExPert's claims against it for Kelly and Von Eperstein's alleged injuries and such claims are dismissed.

  e. **Overhead Increases**

Settoon also asserts that ExPert's claim for overhead increases should be dismissed because ExPert cannot establish the actual amount of such damages. Specifically, Settoon argues that ExPert cannot use its operating agreement with the well owners as proof of the amount of its increased overhead because Settoon is not a party to that contract. ExPert opposes dismissal of this claim arguing that the operating agreement sets out a formula for a stipulated amount of increased overhead, which satisfies the burden of proving damages.

Under Louisiana law, the plaintiff in a tort action bears the burden of proving fault, causation, and damages. Buckley v. Exxon Corp., 390 So.2d 512, 514 (La. 1980). Further, a "contract is an agreement by two or more parties whereby obligations are created." LA. CIV. CODE ANN. art. 1906 (2009). Consent of the parties is required to form a contract. Id. at 1927. Settoon is not a party to the operating agreement between ExPert and the well owners and did not consent to be bound by such contract. However, the contract is an indication that ExPert actually incurred increased overhead expenses. As such, ExPert has stated a cause of action against Settoon for increased overhead expenses. Whether ExPert is entitled to recover such damages and the amount thereof, is not necessarily determined by the contract, but will depend on all of the sources of proof of such damages. Therefore, Settoon's motion is denied as to ExPert's claims for increased overhead.

### f. Lost Business Opportunities

Settoon argues that ExPert's claim for lost business opportunities should be dismissed because ExPert has not produced any documents to support this claim and would probably present only the testimony of ExPert employees to support it. ExPert contends that it will present testimony from many witness, both from within ExPert and outside of ExPert, including an expert, to support its claim.

Under Louisiana law, a claim for lost profits, must be proved with reasonable certainty. Borden, Inc. v. Howard Trucking Co., 454 So.2d 1081, 1092 (La. 1983). Further, such a claim cannot be based completely on the injured party's testimony, unsubstantiated by other evidence.

Louisiana Joint Underwriters of Audubon Ins. Co. v. Gant, 439 So.2d 1153, 1157 (La. App. 4 Cir.1983), writ denied, 443 So.2d 589 (La. 1983).  However, this Court is not aware of a requirement that such "other evidence" be documents, rather than testimony of outside witnesses. Further, this court has previously ruled that, in the absence of documentation, ExPert can offer witness testimony to support its claims. (Doc. #265).  However, any witnesses ExPert intends to present must have been previously identified in its initial disclosures required by Federal Rule of Civil Procedure 26, during the course of discovery, and/or the pretrial order(s).  Thus, Settoon's motion is denied as to ExPert's claim for lost business opportunities.

### g. Increased Control of Well Rate

Settoon argues that ExPert's claim for increased Control of Well ("COW") coverage should be dismissed as too speculative because ExPert has not provided a factual basis for this claim. ExPert argues that, although it does not have any documentation to support this claim, its chief financial officer ("CFO"), Michael Ledet, will testify as to the negotiation for and purchase of its insurance policies.  ExPert claims that it informed Settoon in April 2009 that Mr. Ledet would so testify and Settoon chose not to depose him.

As this Court previously held that in the absence of documents to support its allegations, ExPert will be allowed to present witness testimony to support its claims. (Doc. #265). However, any witnesses ExPert intends to present must have been previously identified in its initial disclosures required by Rule 26 of the Federal Rules of Civil Procedure, during the course of discovery, and/or the pretrial order(s). Thus, Settoon's motion is denied as to ExPert's increased COW claims.

### h. <u>Loss of Business Reputation</u>

Settoon argues that ExPert's claim for loss of business reputation should be dismissed because ExPert has not presented any documents or evidence to support this claim. Specifically, Settoon contends that ExPert must show, with outside testimony and documents, that it had a good reputation that was detrimentally affected. ExPert counters Setton's argument by stating that it will offer the testimony of numerous witnesses, both from within and outside of the company, and accounting records to support its claim for loss of business representation.

ExPert's assertions as to its intended sources of proof show that its claims for loss business reputation should not be dismissed on a motion for summary judgment. However, any witnesses ExPert intends to present must have been previously identified in its initial disclosures required by Rule 26 of the Federal Rules of Civil Procedure, during the course of discovery, and/or the pretrial order(s). Thus, Setton's motion is denied with respect to ExPert's loss of business reputation claims.

### i. <u>Potential Cleanup Costs if Well #1 Fails</u>

Settoon contends that ExPert's damage claim for potential cleanup costs if Well #1 fails should be dismissed because ExPert has not offered any evidence, documentary or otherwise, to show how or why the well may fail or why the potential cleanup costs for such potential failure is $15,000,0000. ExPert, on the other hand, argues that there is an increased chance of failure because the well was not properly plugged and that it will offer testimony from petroleum engineers who will discuss the design of the plug and the increased chances of failure.

This court previously held that in the absence of documents to support its allegations, ExPert will be allowed to present witness testimony support its claims. (Doc. #265). However, any witnesses ExPert intends to present must have been previously identified in its initial disclosures required by Rule 26 of the Federal Rules of Civil Procedure, during the course of discovery, and/or the pretrial order(s). Thus, Settoon's motion is denied as to ExPert's potential cleanup costs if Well #1 fails.

### j.     **Increased Insurance Costs**

Settoon seeks dismissal of ExPert's claim for increased insurance costs. Settoon argues that ExPert has not produced any documentation to support its claim that its insurance premiums rose as a result of the event and that ExPert should not be permitted to pursue this claim based upon only the testimony of its CFO. ExPert contends that it informed Settoon in April 2009 that its CFO, Mr. Ledet, would offer testimony related to the negotiation for and purchase of its insurance policies and that Settoon chose not to depose Mr. Ledet.

This Court previously held that in the absence of documents to support its allegations, ExPert will be allowed to present witness testimony to support its claims. (Doc. #265). However, any witnesses ExPert intends to present must have been previously identified in its initial disclosures required by Rule 26 of the Federal Rules of Civil Procedure, during the course of discovery, and/or the pretrial order(s). Thus, Settoon's motion is denied as to ExPert's alleged increased insurance costs.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Settoon Towing LLC's Motion for Partial Summary Judgment on ExPert's Damages is **GRANTED** as to claims for individual damages.

**IT IS FURTHER ORDERED** that ExPert's claims for individual damages are **DISMISSED**.

**IT IS FURTHER ORDERED** that Settoon's motion is **DENIED** as to ExPert's claims for Barataria Production Services, ICW shutdown suits, NRDA fines and/or penalties, overhead increases, lost business opportunities, increased COW rate, loss of business reputation, potential cleanup costs if Well #1 fails, and increased insurance costs.

New Orleans, Louisiana, this __4th__ day of December 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**