UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE NATIONAL INSURANCE COMPANY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-1263 C/W 07-4230** |
| **SETTOON TOWING, LLC, ET AL.** | **SECTION: "S" (4)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that State National Insurance Company's Motion for Rehearing/Reconsideration (Doc. #571) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Judgment to Provide Prejudgment Interest (Doc. #573) is **GRANTED.**

**IT IS FURTHER ORDERED** that Certain Insurers' Motion for Entry of Rule 54(b) Judgment filed by defendants St. Paul Fire and Marine Insurance Company, Federal Insurance Company, and New York Marine and General Insurance Company (Doc. #570) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for the Entry of Rule 54(b) Judgment (Doc. #575) is **GRANTED**.

BACKGROUND

On January 20, 2007, the M/V CATHY M. SETTOON, a vessel owned and operated by plaintiff Settoon Towing, LLC, while pushing a barge, struck a well owned and operated by ExPert

Oil and Gas, LLC ("ExPert"), in Bayou Perot in Jefferson Parish, Louisiana. The allision caused extensive damage to the wellhead and resulted in an uncontrolled spray of crude oil into the bayou.

Following the allision, the captain of the M/V CATHY M. SETTOON did not report the event to Settoon or the United States Coast Guard.

On January 21, 2007, another Settoon vessel, the M/V CHERYL SETTOON, passed the allision site. The captain of that vessel, Robert Hartman, reported the oil spill to the Coast Guard and Settoon's Safety Manager, Nick Cater. Thereafter, the Coast Guard conducted an investigation to determine which vessel struck ExPert's wellhead. The captain of the M/V CATHY M. SETTOON initially denied involvement in the event. However, on February 23, 2007, 34 days after the event, he admitted his involvement when the Coast Guard confronted him with a reconstruction of the allision from the M/V CATHY M. SETTOON's tracking system.

At the time of the event, Settoon had various marine insurance policies provided by State National Insurance Company ("SNIC"), New York Marine and General Insurance Company ("NYMAGIC"), Federal Insurance Company ("Federal'), and St. Paul Fire and Marine Insurance Company ("St. Paul"). The SNIC policies included a marine general liability policy, a hull and machinery/protection and indemnity policy, and a first layer bumbershoot policy that provided $4,000,000 of excess insurance coverage over the underlying policies. NYMAGIC insured 100% of the second bumbershoot layer of insurance providing $5,000,000 excess insurance over the SNIC first layer bumbershoot excess marine insurance policy. NYMAGIC, Federal, and St. Paul all subscribed to the third layer bumbershoot policy which provided $40,000,000 aggregate policy limit

of excess insurance over the first and second layer bumbershoot excess marine insurance policies. Settoon notified the insurers in writing of the event on February 26, 2007.

**A.      NYMAGIC, Federal, and St. Paul**

The excess marine insurance policies issued to Settoon by NYMAGIC, Federal, and St. Paul exclude pollution liability from coverage. The policies provide that they do not apply "[t]o any claim directly or indirectly in consequence of the actual or potential discharge, dispersal, release, or escape of . . . petroleum produces or derivatives, . . . into or upon . . . any watercourse or body of water." Also, Endorsement No. 2 of the policies provides that "[n]otwithstanding anything to the contrary contained in this policy, . . . this policy shall not apply to . . . [l]ibaility for . . . loss of, damage to, or loss of use of property directly or indirectly caused by or arising out of seepage into or onto and/or pollution and/or contamination of water . . . irrespective of the cause of the seepage and/or pollution and/or contamination, or whenever occurring."

Endorsement No. 8 of the excess marine insurance policies that NYMAGIC, Federal, and St. Paul issued to Settoon also contain an absolute pollution exclusion, with a sudden and accidental pollution liability buyback option.  Specifically, Endorsement No. 8 provides in pertinent part:

> I.      <u>ABSOLUTE POLLUTION EXCLUSION:</u>
>
> (A)     In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any liability for . . . "property damage"[1] . . . arising out of the actual, alleged or threatened "release" of

---

[1] The policy defined "property damage" as:

> loss of or direct damage to or destruction of tangible property (other than property owned or occupied by the Named Assured), including all resultant loss of use of such tangible property.

>"pollutants" into or upon . . . any watercourse, water supply, reservoir or body of water.
>
>It is further agreed that the intent and effect of this exclusion is to delete from any and all coverage's (sic) afforded by the policy any "occurrence"[2], claim, suit, cause of action, liability, settlement, judgment, defense costs or expenses in any way arising out of such "release" whether or not such "release" is sudden or gradual and whether or not such "release" is expected, intended, foreseeable, fortuitous, accidental, or inevitable, and wherever such "release" occurs.
>
>>(B)   Definitions
>>
>>>(1) "Pollutants" means any . . . liquid, gaseous . . . contaminant, . . . The term "pollutants" shall include products, which have escaped or have been released from tanks, drums, pipelines, hoses, or any other conveyance or container and as a consequence pose a threat to health, or the environment.
>>>
>>>(2) "Release" means discharge, dispersal, seepage, release, or escape of "pollutants."

II.   SUDDEN AND ACCIDENTAL BUYBACK

>(A)   It is hereby agreed that the above Absolute Exclusion shall not apply provided that the Named Assured establishes that all of the following conditions have been met:
>
>>(1) The occurrence is covered by valid and collectible underlying insurance and listed in the Schedule of Underlying Insurance for the full limit shown therein.

---

[2] The policy defined "occurrence" as:

>an event or a continuous or repeated exposure to conditions which unintentionally causes "personal injury" or "property damage" during the policy period. All such "personal injury" or "property damage" resulting from a common cause or from exposure to substantially the same conditions shall be deemed to result from one "occurrence."

    (2) The occurrence was accidental and was neither expected nor intended by the assured. An occurrence shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the assured.

    (3) The occurrence can be identified as commencing at a specific time and date during the term of this policy.

    (4) The occurrence became known to the assured within 72 hours after its commencement.

    (5) The occurrence was reported in writing to these underwriters within 30 days after having become known to the assured.

    (6) The occurrence did not result from the assured's intentional or willful violation of any government statute, rule, or regulation.

*     *     *

<b>ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED</b>

**B. SNIC**

The excess marine insurance policy issued by SNIC to Settoon excludes from coverage any liability for, or any loss, damage, injury or expense caused by pollution liability, which is defined, in pertinent part, as "any liability or expense directly or indirectly in consequence of the actual or potential discharge, dispersal, release, or escape of . . . petroleum products or derivatives, . . . into or upon . . . any watercourse or body of water." The policy also contains a pollution liability endorsement, which provides that the pollution liability exclusion shall not apply if the insured establishes that all of the following conditions have been met:

    A) The discharge, dispersal, release or escape was accidental and was neither expected nor intended by the Insured; a discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Insured.

    B) The discharge, dispersal, release or escapee (sic) can be identified as commencing at a specific time and date during the term of this policy.

    C) The discharge, dispersal, release or escape became known to the Insured within 72 hours after its commencement.

    D) The discharge, dispersal, release or escape was reported in writing to these underwriters with 21 days after having become known to the Insured.

    E) The discharge, dispersal, release or escape did not result from the Insured's intentional and willful violation of any government statute, rule or regulation.

On August 21, 2007, SNIC, NYMAGIC, and Federal filed a Declaratory Judgment Action in the United States District Court for the Eastern District of Louisiana, Civil Action Number 07-4230, seeking a judicial declaration that the marine insurance policies that they provided to Settoon do not cover Settoon's losses or those of any third party relating to the January 20, 2007, oil spill. On March 15, 2011, Settoon filed a third party complaint against St. Paul seeking coverage under its policy.

The insurers and Settoon filed cross-motions for summary judgment regarding the applicability of the pollution exclusions and the sudden and accidental pollution buyback endorsements. On September 23, 2011, this court held that the pollution exclusions in the NYMAGIC, Federal, and St. Paul insurance policies were enforceable, and that Settoon failed to meet the sudden and accidental pollution liability buyback endorsement's condition that Settoon report the occurrence to its insurers within 30 days after its becoming aware of it. However, this court held that SNIC could not rely on the exclusions in its policy to deny coverage because it did not timely deliver the policy to Settoon as required by Louisiana law. SNIC filed a motion for reconsideration of this ruling, and the other parties filed motions for entry of judgment pursuant to

Rule 54(b) of the Federal Rules of Civil Procedure. Also, Settoon filed a motion to amend the judgment to include an award of prejudgment interest against SNIC.

## ANALYSIS

A.  **SNIC's Motion for Reconsideration (Doc. #571)**

SNIC seeks reconsideration of this courts ruling that it cannot rely upon the exclusions in the first layer bumbershoot policy that it provided to Settoon to deny coverage because it did not timely issue the policy to Settoon.

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. Bass v. U.S. Dep't of Agric., 211 F.3d 959, 962 (5th Cir. 2000). The United States Court of Appeals for the Fifth Circuit has held nonetheless that if such a motion is filed within twenty-eight days after entry of the judgment from which relief is being sought, the motion will be treated as motion to alter or amend under Rule 59(e). Hamilton Plaintiffs v. Williams Plaintiffs, 147 F.3d 367, 371 n. 10 (5th Cir. 1998); see also FED. R. CIV. PRO. 59(e). Because SNIC filed the instant motion on October 18, 2011, the motion will be subject to the standards for Rule 59(e).

A Rule 59(e) motion calls into question the correctness of a judgment. In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). The court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration under Rule 59(e). Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990). "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." In re Transtexas Gas Corp., 303 F.3d at 581. "A Rule 59(e) motion should not be used to relitigate prior matters that

should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." In re Self, 172 F. Supp. 2d 813, 816 (W.D. La. 2001).

SNIC argues that reconsideration is warranted because Settoon's insurance broker substantially knew the terms that would be included in the sudden and accidental pollution liability buyback endorsement, it delivered the policy soon after it was issued, and Settoon's broker's failure to provide copies of the underlying insurance policies to SNIC caused the delay in the issuance of the policy. SNIC raised these arguments in opposition to Settoon's motion for summary judgment. SNIC has not shown any manifest errors of law or new evidence. Therefore, its motion for reconsideration is **DENIED**.

**B.     Settoon's Motion to Amend Judgment to Provide Prejudgment Interest (Doc. #573)**

Settoon seeks to amend this court's September 23, 2011 order and reasons (Doc. #559) to include an award of prejudgment interest in its favor against SNIC. Settoon argues that this court should apply Louisiana law to the excess marine insurance policy and permit an award of prejudgment interest above the policy limits although the SNIC first layer bumbershoot marine insurance policy does not include a provision expressly permitting such an award.

Federal common law ordinarily applies to maritime disputes. Albany Ins. Co. v. Kieu, 927 F.2d 882, 886 (5th Cir. 1991). However, state law can supplement or supersede maritime law, and "is particularly significant in marine insurance disputes." Id. Indeed, the United States Court of Appeals for the Fifth Circuit has held that state law governs the interpretation of marine insurance policies unless there is a federal maritime rule that controls the disputed issue. Id. To determine whether a federal maritime rule controls the disputed issue, the court must examine: (1) whether the

federal maritime rule constitutes an entrenched federal precedent; (2) whether the state has a substantial and legitimate interest in the application of its law; and, (3) whether the state's rule is materially different from the federal maritime rule. Id. at 886-87 (internal citations omitted). "These factors are merely instructive and not dispositive." Id. at 887.

### 1. Whether the federal maritime rule constitutes an entrenched federal precedent

In Ryan Walsh Stevedoring Co. v. James Marine Serv. Inc., 792 F.2d 489, 493 (5th Cir. 1986), the Untied States Court of Appeals for the Fifth Circuit held that "[a] marine insurer is not liable for interest in excess of its policy limits unless language in the policy so provides." (citing Alcoa Steamship Co. v. Charles Ferran & Co., 443 F.2d 250 (5th Cir. 1971), sub nom., Underwriters at Lloyds London v. Alcoa Steamship Co., 92 S.Ct. 98 (1971)). However, this is not an "entrenched" federal maritime precedent. Alcoa Steamship, upon which the Ryan Walsh court relies, was limited to its facts. Indeed, in Alcoa Steamship, the United States Court of Appeals for the Fifth Circuit stated that they

> do not make this as a choice of law for general (or Louisiana) application. We do it in the context of this situation in which the insurance was a carefully dovetailed, integrated program in which each had significant interests at stake, often regardless of the ultimate outcome of a potential claim.

Alcoa Steamship, 443 F.2d at 255. Further, the United States Court of Appeals for the Eleventh Circuit is the only other appellate court to adopt this rule. See Steelmet, Inc. v. Caribe Towing Corp., 842 F.2d 1237 (11th Cir. 1988).

### 2. Whether the state has a substantial and legitimate interest in the application of its law

Louisiana has a substantial and legitimate interest in the application of its law. "Regulation of insurance relationships, including marine insurance relationships, has historically been a matter of state concern." Albany, 927 F.2d at 887. Because the states have more experience in regulating insurance matters, they are "far better equipped to balance the risks that each party to an insurance contract endures." Id.

### 3. Whether the state's rule is materially different from the federal maritime rule

The Louisiana law on an insurer's liability for prejudgment interest in excess of the policy limits is materially different from the maritime rule. Louisiana Revised Statutes § 13:4203 provides that legal interest runs from the date of judicial demand on all tort judgments rendered by the courts.[3] Louisiana jurisprudence interprets this statute to require primary and excess insurers, in the event of judgment, to pay the prejudgment interest attributable to their proportionate share of the total judgment in excess of their policy limits from the date of judicial demand. Moon v. City of Baton Rouge, 522 So.2d 117, 127 (La. Ct. App. 1987).

Generally, state insurance law that is materially different from federal maritime law should not govern marine insurance disputes because it "would defeat the reasonably settled expectations of maritime actors." Albany, 927 F.2 at 887 (quotations omitted). However, as discussed above, the maritime rule that an insurer is not liable for interest in excess of its policy limits unless language in the policy so provides is not an "entrenched" federal maritime precedent. Therefore, this court

---

[3] Although this is a contract action, the underlying event for which Settoon seeks insurance coverage, the January 20, 2007 allision, was a tort.

will apply Louisiana insurance law to the interest issue.  Thus, Settoon's motion to amend the judgment is GRANTED, and it is awarded prejudgment interest against SNIC from the date of judicial demand.

**C.    Certain Insurers' and Plaintiff's Motions for Entry of Judgment (Docs. #570, 575)**

NYMAGIC, Federal, St. Paul, and Settoon filed motions seeking entry of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on this court's September 23, 2011, order and reasons (Doc. #559).  In that order and reasons, this court granted NYMAGIC's, Federal's, and St. Paul's motions for summary judgment, and denied Settoon's cross-motions for summary judgment against them, finding that the pollution exclusions in the insurance policies are applicable and that Settoon did not comply with the provisions of the sudden and accidental pollution liability buyback endorsement.  Also, in that order and reasons, this court granted Settoon's motion for summary judgment against SNIC, and denied SNIC's cross-motion for summary judgment against Settoon, finding that SNIC cannot rely on the exclusions in the first layer bumbershoot marine insurance policy to deny coverage because it did not timely issue the policy to Settoon.

Rule 54(b) provides, in pertinent part:

> when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

"One of the primary policies behind requiring a justification for Rule 54(b) certification is to avoid piecemeal appeals.  PYCA Industries, Inc. v. Harrison County Waste Water, 81 F.3d 1412,

1421 (5th Cir.1996) (citing <u>Ansam Assocs., Inc. v. Cola Petroleum, Ltd.</u>, 760 F.2d 442, 445 (2nd Cir.1985)). "A district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." <u>Id.</u> In deciding whether there is no just reason for delay, the district court has a duty to weigh "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." <u>Road Sprinkler Fitters Local Union v. Continental Sprinkler Co.</u>, 967 F.2d 145, 148 (5th Cir.1992) (citation omitted).

This court finds that there is no just reason for delaying entry of a final judgment to allow Setton to appeal the court's order and reasons granting NYMAGIC's, Federal's, and St. Paul's motions for summary judgment, and denying Settoon's cross-motions for summary judgment against those insurers. Also, this court finds that there is no just reason for delaying entry of a final judgment to allow SNIC to appeal this court's order and reasons denying its motion for summary judgment and granting Settoon's cross-motion for summary judgment against it. The order and reasons resolves the issues among the parties regarding pollution coverage. The parties' motions for entry of judgment are GRANTED to avoid the hardship and injustice that would result if this case proceeded to trial on the limited remaining issues regarding property damage coverage as to SNIC and NYMAGIC, and compensatory damages and bad faith as to SNIC if the appellate court holds that the pollution coverage issues should have been resolved differently.

## CONCLUSION

   **IT IS HEREBY ORDERED** that State National Insurance Company's Motion for Rehearing/Reconsideration (Doc. #571) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Judgment to Provide Prejudgment Interest (Doc. #573) is **GRANTED.**

**IT IS FURTHER ORDERED** that Certain Insurers' Motion for Entry of Rule 54(b) Judgment filed by defendants St. Paul Fire and Marine Insurance Company, Federal Insurance Company, and New York Marine and General Insurance Company (Doc. #570) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for the Entry of Rule 54(b) Judgment (Doc. #575) is **GRANTED**.

New Orleans, Louisiana, this  7th  day of November, 2011.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**